UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**MADELINE COX ARLEO**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST.
ROOM 2060
NEWARK, NJ 07101
973-297-4903

March 3, 2015

VIA ECF
All Counsel of Record

## SUPPLEMENTAL LETTER OPINION & ORDER

Re:   In re Enzymotec Ltd. Securities Litigation
      Civil Action No. 14-5556

Dear Counsel:

Before the Court are the competing motions of Plaintiff 3B Communications ("3B") and Plaintiffs David R. Raabe, David E. Raabe, and Yehuda L. Danon (collectively, the "Enzymotec Investor Group," or "EIG") for appointment as lead plaintiffs and approval of their selection of counsel [Dkt. Nos. 5, 6].[1] On February 13, 2015, this Court issued an order granting the Enzymotec Investor Group's motion [Dkt. No. 20]. On February 26, 3B moved for reconsideration of the Court's order [Dkt. No. 23]. This letter supplements the Court's February 13 order and responds to 3B's motion for reconsideration.

### I. Introduction

This case is a securities class action that was initially filed by Plaintiff Amram Aharoni on September 5, 2014. Dkt. No. 1, Compl. The Complaint alleges violations of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Compl. ¶¶ 71-101. 3B filed its motion for appointment as lead plaintiff on November 4, 2014, and the Enzymotec Investor Group filed its motion the following day. See Dkt. Nos. 5 & 6, Mots.

---

[1] The parties also moved for consolidation of this case with Moorefield v. Enzymotec Ltd., et al., Civil Action No. 14-6075. That motion was granted as part of the Court's February 13 order, and the cases have since been consolidated under the caption stated above. In addition, the Court notes that Plaintiff Fred LaPorte and Plaintiffs Amram Aharoni, Keren Aharoni, and Tomer Aharoni also filed motions [Dkt. Nos. 4, 7]. LaPorte subsequently voiced his non-opposition to 3B's appointment as lead plaintiff, while the Aharonis lent their support to the Enzymotec Investor Group. See Dkt. Nos. 9, 11.

for Appointment as Lead Pls.  3B and EIG each oppose the motion of the other.

3B argues that because it is the plaintiff with the largest financial stake in the outcome of this litigation and satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a), it is presumptively the most adequate plaintiff under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA"), and EIG has failed to rebut that presumption.  While EIG does not dispute that 3B does indeed possess the largest financial stake in this litigation, EIG argues that the presumption in favor of 3B has been rebutted because: (1) 3B failed to file a proper certification in accordance with 15 U.S.C. § 78u-4(a)(2)(A); and (2) the alleged connection of 3B's directors to a criminal enterprise in Panama raises additional concerns regarding 3B's adequacy as lead plaintiff.

For the reasons that follow, the Court finds that EIG has successfully rebutted the presumption in favor of 3B as lead plaintiff.  Furthermore, because EIG possesses the second largest financial interest in the litigation and meets the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a), EIG is presumptively the most adequate lead plaintiff, a presumption which stands unrebutted.  Accordingly, the Court grants EIG's motion for appointment as lead plaintiff and denies 3B's motion.

## II. Discussion

The PSLRA follows a detailed procedure that must be followed by any party seeking to be named lead plaintiff in a securities class action.  See 15 U.S.C. § 78u-4.  The PSLRA displaces the traditional rule for appointing lead plaintiffs, which generally gave preference to the party who first filed suit.  In lieu of that rule, the PSLRA requires the Court to "adopt a [rebuttable] presumption that the most adequate plaintiff . . . is the group or group of persons that . . . has the largest financial interest" in the outcome of the litigation and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  A competing plaintiff may rebut this presumption, however, upon a showing that the presumptively most adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  Id. § 78u-4(a)(3)(B)(iii)(II).

There is no dispute that 3B possesses the largest financial interest in the outcome of this litigation.  Accordingly, the Court will focus on whether 3B meets the requirements of Rule 23(a). In particular, the Court will focus, as it must, on the typicality and adequacy requirements of Rule 23.  In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001).  In assessing whether the PSLRA's presumption arises in the first instance, the Third Circuit has held that a court should determine typicality and adequacy on the basis of its own independent judgment—that is, without the aid of any other parties.  See id. at 263-64.  The Court's typicality and adequacy analysis at this stage thus "need not be extensive," since only a prima facie showing is required to give rise to the presumption.  Id. at 264.

2

With respect to typicality, the Court must consider whether the movant's circumstances differ in a meaningful way from those of other class members, and whether the legal theory supporting the movant's claims differs for that of other class members. Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988). Here, it is plain that 3B makes a prima facie showing of typicality. In addition, it is equally plain that 3B makes a prima facie showing of adequacy, which requires an inquiry into: (1) whether it is willing and able to represent the class's claims vigorously; (2) whether it has obtained adequate counsel; and (3) whether a conflict exists between its claims and those of the class. Id. at 179. The Court finds that 3B has made a satisfactory showing on all three elements. Therefore, 3B is presumptively the most adequate plaintiff.

In an effort to rebut the presumption, however, EIG argues that 3B's certification, which was filed with its motion pursuant to 15 U.S.C. § 78u-4(a)(2)(A), is defective because it fails to demonstrate the authority of the signer to take action on 3B's behalf. EIG posits that 3B's deficient certification will subject it to a unique defense that renders 3B "incapable of adequately representing the class" and, as a result, 3B is not the presumptively most adequate lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). This Court agrees.

The existence of a defense unique to the presumptively most adequate lead plaintiff rebuts the presumption because a unique defense, as the Third Circuit has recognized, raises the danger that "the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006). While the PSLRA is clear that a competing plaintiff seeking to rebut the presumption must present "proof" of the existence of such a unique defense, see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), such proof need not definitively establish the defense at such an early stage of the litigation. Steamfitters Local 449 Pension Fund v. Cent. European Dist. Corp., Nos. 11-6247, 11-7085, 2012 WL 3638629, at *9 (D.N.J. Aug. 22, 2012) (internal quotations and citation omitted). Rather, the competing plaintiff must show simply that there is some degree of probability that the defense might "become a major focus" in the case. Id.

With respect to possible defenses arising out of a deficient certification, the Steamfitters case to which both parties cite is instructive. There, a group of nine related investment entities sought appointment as lead plaintiff. Id. at *2-3. The nine group members were structured such that one entity, PCM, was the investment manager for four different funds, each of which had a wholly-owned subsidiary. Id. at *3. The managing director of PCM executed a certification pursuant to the PSLRA in which the subsidiaries—the actual owners of the defendant's stock—purportedly authorized PCM to pursue their claims on their behalf. Id. After finding that only the subsidiaries had standing to bring suit, the court turned its attention to whether the subsidiaries themselves would be subject to unique defenses that would render them ineligible for lead plaintiff status. See id. at *9-12.

In particular, the court considered whether the certification signed by PCM's managing director made declarations specific to the subsidiaries that contained enough factual matter to

3

satisfy the PSLRA's requirements as to them.  Id. at * 12.  The court found that the certification fell short of the PSLRA's requirements because a number of declarations in the certification referred only to PCM and not to the subsidiaries specifically.  See id.  Given the PSLRA's stringent requirements for lead plaintiff certifications, the court found that it was likely that the subsidiaries "would be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable."  Id.

The reasoning in Steamfitters applies with equal force in this case.  Here, 3B's certification could be subject to attack because it provides no indication that its signer, Ami Baksis, is authorized to sign the certification on 3B's behalf.  Indeed, nowhere in 3B's certification does Mr. Baksis identify himself or provide any indication of his role within 3B.  3B dismisses EIG's argument that the failure to do so runs afoul of the PSLRA's requirements.  Of course, 3B is correct that the PSLRA does not explicitly require the signer of a certification on behalf of a corporation to identify his/her position within the company and provide a basis for his/her signing authority.  It seems plain to this Court, however, that any proper certification would include such basic information.

3B attaches certifications filed in other cases in support of its position, but the Court will simply direct 3B to the certification signed by PCM's managing director in Steamfitters, which clearly delineates the managing director's authority to sign the certification on behalf of PCM, each of the four funds, and each of the subsidiaries.  See Civil Action No. 11-6247, Dkt. No. 11-1, Ex. B ¶ 4.  If the detailed certification in Steamfitters could have been subject to attack, then the adequacy of 3B's certification in this case is at the very least "fairly debatable."  Steamfitters, 2012 WL 3638629, at *12.  Therefore, because the Court finds that 3B would be subject to a unique defense with respect to its certification, EIG has successfully rebutted the presumption in favor of 3B as lead plaintiff.[2]

The Court's analysis does not end there, however.  The Court still must determine whether EIG is entitled to the PSLRA's rebuttable presumption and, if so, whether that presumption has been rebutted.  See Cendant, 264 F.3d at 268.  With respect to the threshold elements required to demonstrate entitlement to the presumption, the Court is satisfied that EIG meets them.  First, none of the parties disputes that EIG possesses the largest financial interest of the remaining movants.  In addition, the Court is satisfied that EIG's claims are typical of the class.

Finally, the Court finds that EIG would adequately represent the class, despite 3B's arguments to the contrary.  3B attempts to argue that the three members of EIG have joined together solely for the purpose of gaining control of the litigation, and that such a purpose is improper.  3B further suggests that the members of EIG bear no relation to one another.  In

---

[2] Because a unique defense exists as to 3B on the basis of deficiencies in its certification, the Court declines to reach the arguments that EIG raises with respect to 3B's corporate structure and its alleged connection to a criminal enterprise in Panama.

response to these arguments, the Court first notes that the Third Circuit has held in no uncertain terms that there is nothing in the PSLRA preventing even a group of <u>unrelated persons</u> from serving as lead plaintiff.  <u>See</u> <u>Cendant</u>, 264 F.3d at 266.  Of course, prior relationships may play some part in the adequacy analysis, but whether there exist prior relationships should not be a chief concern of the Court.  <u>See</u> <u>id.</u> at 266-67.  In any event, it seems quite clear that two of three members of EIG—David R. Raabe and David E. Raabe—are father and son.  Thus, it is not the case that they are an unrelated group of plaintiffs that has been "cobbled together."  The only relevant concern, then, is whether EIG will fairly and adequately represent the interests of the class.  Given the representations made in EIG's joint declaration (<u>See</u> Dkt. No. 6-2, Ex. D) and EIG's selection of experienced and learned counsel, the Court is satisfied that EIG meets that test.

Because the Court finds 3B's arguments with respect to EIG's adequacy unpersuasive, the presumption in favor of EIG is unrebutted with respect to the first prong of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  In addition, 3B identifies no defense unique to EIG that would render it an inadequate lead plaintiff.  Therefore, 3B fails to rebut the presumption on the basis of that prong, as well.  As noted above, the Court is also satisfied that EIG's selection of counsel is clearly acceptable, as the firm biographies disclose a wealth of experience in litigating securities class actions.  (<u>See</u> Dkt. No. 6-2, Exs. E-G).  Thus, the Court approves EIG's selections of co-lead counsel and liaison counsel.

### III. Conclusion

For the reasons stated above, EIG's motion for appointment as lead plaintiffs and approval of their selection of counsel [Dkt. No. 6] is **GRANTED**.  All other motions to that effect [Dkt. Nos. 4, 5, 7] are thus **DENIED**.  In addition, 3B's motion for reconsideration [Dkt. No. 23] is **DENIED**.[3]

                                              **SO ORDERED**.

                                              *s/ Madeline Cox Arleo*
                                              **MADELINE COX ARLEO**
                                              **UNITED STATES DISTRICT JUDGE**

---

[3] The Court recognizes that it did not provide its reasoning when it entered the original order granting EIG's motion on February 13.  The discussion contained in this letter represents that reasoning.  Further, the Court has considered whether it has overlooked any controlling decisions or other matters in deciding the motion.  L. Civ. R. 7.1(i).  <u>See also</u> <u>Max's Seafood Café, by Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999).  The Court is satisfied that it has not.  Therefore, 3B's motion is denied.