**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: ENZYMOTEC LTD. SECURITIES LITIGATION | Civil Action No. 2:14-cv-5556 (JMV) (JBC)<br><br>CLASS ACTION<br><br>**~~[PROPOSED]~~ ORDER APPROVING DISTRIBUTION OF NET SETTLEMENT FUND** |

**WHEREAS**, in the above-captioned litigation, the Claims Administrator has completed the administration of the Settlement Fund, including the processing of all submitted Proofs of Claim, and is now prepared, with the approval of the Court, to distribute the proceeds of the Settlement;

**WHEREAS**, on January 24, 2018, the Court entered a Final Judgment and Order of Dismissal with Prejudice ("Final Judgment") (ECF. No. 87), which, *inter alia*, approved the Plan of Allocation of Settlement proceeds and retained jurisdiction over the litigation for all matters relating to the consummation of the Settlement;

**WHEREAS**, as set forth in the Order Preliminarily Approving Settlement, Certifying Settlement Class and Providing for Notice (ECF. No. 81), the deadline for Class Members to submit claims to participate in a distribution from the Net Settlement Fund was December 26, 2017;

**WHEREAS**, as reflected in the Declaration of Alexander Villanova Regarding Distribution Plan (the "Villanova Declaration" or "Villanova Dec."), the Claims Administrator has completed the process of reviewing all submitted claims and has made a recommendation as to the eligibility of each submitted claim;

**WHEREAS**, Lead Plaintiffs and the Claims Administrator now seek authorization to distribute the Net Settlement Fund to Authorized Claimants; and

**WHEREAS**, after reviewing Lead Plaintiffs' Notice of Motion for Approval of Distribution of Net Settlement Fund, the Memorandum of Law in support thereof, the Villanova Declaration, and all other exhibits and papers submitted in support thereof, the Court has determined that good cause exists for the relief requested.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1. This Order incorporates by reference the definitions in the Stipulation of Settlement dated March 29, 2017 ("Stipulation") and in the Villanova Declaration and all capitalized terms used herein shall have the same meanings as set forth in the Stipulation or in the Villanova Declaration.

2. This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Class Members.

3. The claims set forth in Exhibits B-1 ("Timely Eligible Claims") and B-2 ("Late But Otherwise Eligible Claims") to the Villanova Declaration are APPROVED, and the distribution of the Net Settlement Fund to the Authorized Claimants is AUTHORIZED.

4. Wholly ineligible or otherwise deficient claims, as set forth in Exhibit B-3 to the Villanova Declaration, are REJECTED.

5. Epiq Class Action & Claims Solutions, Inc. ("Epiq") is to conduct the distribution as follows:

a. Epiq is directed to distribute 100% of the available balance of the Net Settlement Fund—after deducting fees to itself and after deducting any Notice and Administration Expenses, Taxes, Tax Expenses, and any escrow fees—to Authorized Claimants who would receive at least $10.00 based on their Recognized Loss Amount in comparison to the Recognized Loss Amounts of all Authorized Claimants, as further detailed in the Villanova Declaration (the "Distribution"). Epiq shall notify Authorized Claimants

who do not satisfy the $10.00 *de minimis* requirement that they will not be receiving any distribution from the proceeds of the Settlement;

b. In order to encourage Authorized Claimants to promptly cash their checks, all Distribution checks shall bear the following notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION";

c. Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available to be distributed to other Authorized Claimants if Lead Plaintiffs' Counsel, in consultation with Epiq, determines that it is cost-effective to conduct a second distribution. Similarly, Authorized Claimants who do not negotiate their second or subsequent distributions (should such distributions occur) within the time allotted will irrevocably forfeit any further recovery from the Net Settlement Fund.

d. After Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their distribution checks, which efforts shall consist of the follow-up efforts described in ¶ 37 n.1 of the Villanova Declaration but no earlier than six (6) months after the initial distribution, Lead Plaintiffs' Counsel, in consultation with Epiq, will determine whether it is cost-effective to conduct a second distribution of the Net Settlement Fund to all Authorized Claimants in the Initial Distribution who (1) cashed their distribution payment and (2) are entitled to at least $10.00 from the re-distribution based on their pro rata share of the remaining funds. Additional re-distributions may occur thereafter in six (6) month intervals until Lead Plaintiffs' Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective.

e. If further re-distribution of the funds remaining in the Net Settlement Fund is not cost-effective the remaining balance of the Net Settlement Fund shall be contributed in accordance with ¶5.5 of the Stipulation to a secular non-profit organization designated by Lead Plaintiffs' Counsel, without further order of the Court.

6. In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims received after May 23, 2019. Moreover, no further adjustments to Proof of Claim received on or before May 23, 2019 that would result in an increased Recognized Loss Amount may be made for any reason after May 23, 2019.

7. The administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and the Plan of Allocation. Therefore, all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement, beyond the amounts allocated to Authorized Claimants.

8. Epiq shall be paid the outstanding balance of its fees and expenses in connection with the services performed and to be performed in administering the Proofs of Claim and distributing the Net Settlement Fund in the total amount of $191,022.17, which shall be paid in accordance with

¶5(a) of this Order.

9. One year after all funds have been distributed, Epiq is authorized to destroy the paper copies of the Proofs of Claim and all supporting documentation, and electronic copies of the same.

10. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

IT IS SO ORDERED.

8/16/2019
Dated

Hon. John Michael Vazquez
United States District Judge